## CHARLES IND v. EUGENE ANDREW BAILEY.[1]

October 30, 1936.

No. 30,950.

[1]Reported in 269 N. W. 638.

218

*Robb & Rich,* for appellant.

*Leo P. Doyle, Sexton, Mordaunt, Kennedy & Carroll, Cobb, Hoke, Benson, Krause & Faegre, Paul J. McGough,* and *Nathan A. Cobb,* for respondent.

HILTON, JUSTICE.

Personal injury action in which the plaintiff seeks compensation for damages to one of his trucks which was struck by an automobile driven by Frank Bailey, deceased, near Elgin, Illinois, on the morning of January 4, 1934. Defendant, administrator of the estate of Bailey, interposed a counterclaim for damages for wrongful death and property loss. The trial court directed a verdict against defendant as to that. The jury returned a verdict in favor of plaintiff in the amount of $617.60. This is an appeal from an order denying defendant's motion for a new trial.

The undisputed facts show that the accident in question occurred on an 18-foot paved highway having 8-foot shoulders on each side. It ran in an easterly and westerly direction at the place of collision. Plaintiff had three tractor-trailer units, hauling cement tile, which were traveling eastward at intervals of about 300 feet and at a speed of about 15 miles an hour. Bailey had left Chicago with Minneapolis as his intended destination.

The road conditions were bad. It had rained, and the pavement was covered with ice. For some miles each way from the place of the accident the road was so slippery that it was almost impossible to walk on it. There was a sharp curve in the highway a few hundred feet east of the point where the car and truck came to-

gether. The first unit had just negotiated this curve when it met the Bailey car headed west on its own right side of the highway, traveling at a speed of 35 to 40 miles an hour. Bailey passed by this unit safely without touching any part of it and entered the curve. His car then started to skid, the rear end sluing to the center of the pavement and along it for about 100 feet. The driver of the second unit all along had been traveling with the right wheels of his unit on the shoulder in order to get traction. Seeing Bailey's car swerving, the unit was slowed down from about 15 miles an hour to 4 to 6 miles an hour and was pulled farther over onto the shoulder. In the meantime, Bailey's car went entirely over onto its right shoulder of the highway and along it for about 50 feet. It ceased swerving and skidding, and it appeared as if Bailey had regained control of the car, although its speed had not been decreased. By this time the second unit had been driven over to the right so far that the left wheels were practically off the south side of the pavement. There is some dispute as to whether the unit had stopped entirely and started up again after the Bailey car quit swerving, but in any case it was not going over 4 to 6 miles an hour during all that time. After traveling safely along the shoulder for some distance, Bailey, without reducing his speed, attempted to bring the front end of his car back onto the pavement. The rear end did not come up immediately, and the car in a "split second" shot across the pavement, at an angle of about 45 degrees, a distance of 35 to 40 feet and smashed into the front end of the second unit and went into the ditch. As a result of the injuries there sustained Bailey died. The brakes on the second unit were set as soon as Bailey's car was seen coming across the highway so that the unit was going only 4 to 5 miles an hour at the time of the collision.

Defendant complains that the court erred in withdrawing the question of plaintiff's negligence from the jury. In some way the hub cap and tire of the left front wheel of Bailey's car were damaged. From this defendant urges that the jury might have found that Bailey's car came into contact with the first unit as they met and that this contact caused the admitted loss of control of Bailey's

car. Any such finding on the part of the jury could not have been justified, for the undisputed evidence showed that the right wheels of the first unit were over on the shoulder when the two vehicles met; that the left wheels were far to the right of the center line; also all the testimony was to the effect that there was no such contact. The physical facts were not such that this evidence could be overthrown.

Defendant next suggests that the driver of the second unit was negligent, or might have been found so, because of the fact that the unit was not brought to a complete stop, i. e., it was a question for the jury whether it should have been. Again, any finding that the driver was negligent could not stand. It appears that he immediately slowed down to 4 to 6 miles an hour when Bailey lost control of his car and that he went almost entirely over onto the shoulder. Bailey then apparently gained control of his car, and the truck unit continued on its way, still on the shoulder and at the same slow rate of speed. Then there appeared to be no danger of a collision. Suddenly, however, Bailey attempted to get back on the pavement without slackening his speed, and in a "split second" his car shot across the road into the second unit. The driver of that unit had no time to stop after this new danger confronted him. The brakes were instantly applied. It was reasonable to suppose that Bailey would continue to drive along the shoulder, safely, as he had been doing for many feet, or at least that he would decrease his speed before attempting to regain the pavement. The case of Foster v. Gamble-Robinson Co. 188 Minn. 552, 247 N. W. 801, 802, is much in point. There a car and truck approached each other much as the two did here, both on their respective sides of the road, except that the car had "zigzagged" a few times while a block away from the truck, but as it approached the truck this movement had ceased. There this court said [188 Minn. 555]:

"In our opinion the evidence most favorable to the plaintiff was insufficient to show any conduct on the part of the driver of the truck which indicated negligence on his part. * * * He had a

right to assume that Gongell [driver of the car] would manage his car with ordinary prudence and that if his rear wheel was off the pavement he would continue straight on at the very moderate speed at which he was going and stay completely clear of the side of the pavement upon which Serr [driver of the truck] was traveling. Until just the moment of the collision Gongell succeeded in keeping his car entirely on his side of the pavement and well over towards the outside edge. Reduction of speed by Serr to 15 miles per hour is, in our opinion, the conduct of a man of ordinary prudence. It would have been the exercise of extraordinary care to stop the truck as soon as Serr saw Gongell so slightly over the edge of the pavement. Certainly Serr could not anticipate that Gongell, when so closely in front of the truck, would swing it upon the pavement with a motion so violent as to swerve it to the left and completely over onto the wrong side of the road."

The cases of Spates v. Gillespie, 191 Minn. 1, 252 N. W. 835, and Luck v. Gregory, 257 Mich. 562, 241 N. W. 862, 864, 244 N. W. 155, both cited by defendant, are not in point. In the former the car occupying the position analogous to that of Bailey's car was out of control at all times for a distance of 300 feet before the collision, whereas Bailey apparently had regained control of his machine. In the Gregory case this court pointed out the distinction when it stated [257 Mich. 568]: "Plaintiff's driver saw defendant in such place of danger." Here whatever danger there had been seemingly had ceased, and when it recurred it was entirely too late for the driver of the second unit to do anything about it. He exercised more than ordinary care. By no means can it be said that negligence other than that of Bailey was the proximate cause of the damage done.

The court refused to admit evidence as to the time it took Bailey to drive from Minneapolis to Chicago two weeks before the accident and also an offer of proof as to the itinerary expected to be used on the return trip, i. e., the one on which the fatal accident occurred. There was no error. The evidence would have had no bearing whatever on the care or lack of care that decedent was exercising at the time of the collision. It was entirely too remote.

Also assigned as error was the failure of the court to instruct the jury so as to give Bailey the benefit of the rule relative to "justification by emergency or traffic hazard." When evidence indicates that an emergency or traffic condition caused a driver to lose control, then such loss of control may be justified, *provided* the driver is without fault and his own negligence did not cause the condition. Jannette v. M. F. Patterson D. S. Co. 193 Minn. 153, 258 N. W. 31; Martin v. Tracy, 187 Minn. 529, 246 N. W. 6. Here the driver was not without fault. What emergency there was had been created by his own negligent acts. He was not entitled to the benefit of the rule. The condition of the highway should have been apparent to all who were using it.

The trial court properly denied defendant's motion for a new trial.

Affirmed.

