Eva Amanda HAYWARD, Plaintiff in Error,

v.

James GINN, Defendant in Error.

No. 36508.

Supreme Court of Oklahoma.

Jan. 22, 1957.

Bruner, Resler & Matuska, by Sylvan Bruner, Pittsburg, Nesbitt & Nesbitt, by Frank Nesbitt, Miami, for plaintiff in error.

Rucker, Tabor & Cox, Thomas L. Palmer, Tulsa, for defendant in error.

PER CURIAM.

The parties are referred to as they appeared in the trial court.

This action arose from an automobile collision at intersection of U. S. Highway 166 and a county road approximately three miles east of Baxter Springs, Kansas, and within that state. On September 16, 1952, the plaintiff's car was proceeding east along said highway, as was the car of the defendant. Plaintiff alleges in her petition that she was operating her automobile, but this is denied by the defendant, who alleges that plaintiff's daughter was the driver. At the intersection mentioned, the two automobiles collided by defendant's car hitting plaintiff's car from the rear. The plaintiff's allegation is that she was attempting to turn on to the county road and had given a proper signal of her intention and that the defendant negligently and in violation of certain statutes ran into her car from the rear. The defendant's allegation is that the plaintiff negligently gave a variety of signals and then stopped in the middle of the road without any warning and in violation of certain statutes. The defendant filed a cross-petition based on the alleged negligence of the plaintiff in knowingly permitting her daughter, Mary Grube, a minor under eighteen years of age and not authorized to operate a motor vehicle, to drive plaintiff's car at the time of the collision. Also alleged was that the plaintiff was contributorily negligent, that the accident was unavoidable, and that Mary Grube was the agent of the plaintiff. Plaintiff filed a reply denying these allegations. Both parties pleaded certain statutes of the State of Kansas. Those material to this decision are G.S.Kan.1949, 8–263, which forbids a person from knowingly permitting his child under eighteen to drive when not authorized under the provisions of the uniform license act, and G.S.Kan.1949, 8–264, which forbids any person from knowingly permitting a motor vehicle owned by him or under his control to be driven by any person not licensed.

■ On the issues thus pleaded, the case was tried to the jury in December, 1953, which returned a verdict for the defendant. Only those questions argued in the briefs are treated in this opinion, the others noted on the petition in error being deemed waived. Chicago, Rock Island & Pacific Ry. Co. v. State, 203 Okl. 659, 225 P.2d 363. Furthermore no question of a conflict between the law of this forum and that of the State of Kansas has been presented.

Plaintiff argues that the giving of Instructions Nos. 14, 15 and 16 was error. Instructions Nos. 14 and 15 were only a statement by the court of the language of the statutes heretofore noted. Instruction No. 16 was that it is the duty of a person operating a motor vehicle to observe the law with reference to the operation thereof as given by the court in Instructions Nos. 8 to 15 inclusive, and any violation of said law was negligence per se. The instruction pointed out, however, that it must appear that such negligence per se was the proximate cause of the injury.

The testimony concerning who was actually operating the plaintiff's car at the time of the collision was conflicting. The plaintiff and her daughter testified that plaintiff was driving. Defendant and the only other witness to the collision testified that Mary Grube was driving. Mary Grube admitted in her testimony that she had no driver's license at the time of the collision and that she was only sixteen years of age at the time of the trial. Her mother confirmed her age, but testified: "I don't know what she had" in response to a question concerning whether or not Mary had a driver's license. Mary also testified that she had a "permit" but there is nothing in the evidence to show the nature of this

permit and whether or not it authorized her to drive under these circumstances.

■ There was nothing improper in the court's instructions Nos. 14 and 15, for they were but quotations of the applicable statutes concerning the defendant's theory as pleaded in a cross-petition and as introduced in evidence. They were similar in form to the court's instructions upon the statutes applicable to the plaintiff's theory of the case, and they were all grouped together in the instructions. Instruction No. 16 was applicable, by its terms, to all those instructions enunciating the statutes pleaded and therefore applied to the plaintiff's and defendant's theories of the case. The inclusion of Instructions 14 and 15 within those instructions, a violation of which was denominated negligence per se by Instruction No. 16, if error, which we do not concede, was only harmless error in view of Instruction No. 20. The plaintiff conceded in her reply brief that Instruction No. 20 was appropriate, and we agree, defining, as it did, an explicit liability of the plaintiff. 47 O.S.1951 § 308; G.S.Kansas 1949, 8–222. Instruction No. 20 provided in part that:

> "Any person as herein defined who is the owner of a motor vehicle and knowingly permits such motor vehicle to be operated by any person who is not qualified to operate a motor vehicle under the provisions of this Act shall be held civilly liable as a joint tort feasor for any unlawful act committed by such operator."

■ The import of this statute, as employed in Instruction 20, is to make the owner a joint tort-feasor when he permits his automobile to be operated by a person, knowing that such person is not qualified as an operator, when such person commits some act of actionable negligence while operating the vehicle. Greenland v. Gilliam, 206 Okl. 85, 241 P.2d 384. It is axiomatic that the defendant was entitled to an instruction on the evidence in support of his cross-petition. There was evidence in the record, direct and circumstantial, from which the jury might have concluded that Mary Grube was driving the plaintiff's automobile at the time of the collision, that she had no driver's license, that she was negligent, and that the plaintiff permitted her to drive knowing that she was not authorized. Whether permitting the unauthorized person to operate the vehicle was also negligence per se was immaterial, and the giving of that instruction could hardly have been prejudicial to the plaintiff's cause in view of her joint liability for any actionable negligence of the driver under the same facts.

There is testimony in the case reasonably tending to prove, on behalf of the plaintiff, that the defendant was operating his vehicle in a manner such that he was unable to bring it to a stop within the assured clear distance ahead and that he failed to keep a proper lookout ahead of him. On the other hand, the evidence on behalf of the defendant reasonably tends to prove that the plaintiff or her daughter, regardless of which one was operating the vehicle, failed to give a proper signal of her intention to turn and that she gave contradictory signals of the direction in which she intended to turn, and further, that instead of turning she stopped her vehicle in the middle of the lane of traffic without any notice. The highway at this point was paved, level, and straight for miles. It was a clear day and no other traffic was involved. The trial court gave an instruction on unavoidable accident, and the plaintiff maintains that the giving of this instruction was error.

■■ It can be seen from the summary of the evidence that there was no factor or circumstance in this collision to suggest that the accident occurred in any manner other than by the intentional conduct of the drivers, or that it could not have been prevented by either driver. This is not to say that their actions were or were not negligent. Unlike negligence, the issue of unavoidable accident depends on an introduction of evidence showing some factor over which the parties had no control, or could not, except by the exercise of ex-

ceptional foresight, have predicted. Here it is not contended that there were any latent defects in the vehicles preventing proper control, or that the presence of some unforeseen and unanticipated factor produced the actions of the drivers or their vehicles. Therefore, there was no legal basis for submitting to the jury the issue of unavoidable accident as a separate and independent defense. Huey v. Stephens, Okl., 275 P.2d 254.

Nevertheless, we have reached the conclusion that the submission of unavoidable accident, with the definition given by the court in connection therewith, could not reasonably have resulted in harm to the plaintiff. Section 78, 12 Okl.Stat.1951, forbids this court reversing a judgment of a trial court unless we can say from an examination of the entire record that such error resulted in a miscarriage of justice or has deprived the complaining party of his constitutional or statutory rights. Obviously, each record must be judged for itself. We are of the opinion, from an examination of the entire record, that the jury must have been so impressed with the fact that the plaintiff was chargeable with contributory negligence that no recovery would have been allowed the plaintiff had the court not incorrectly instructed the jury on the issue of unavoidable accident. We cannot say from our examination and search of the record that the instruction given resulted in a miscarriage of justice. Morris v. White, 177 Okl. 489, 60 P.2d 1031; St. Louis-San Francisco Ry. Co. v. Withers, Okl., 270 P.2d 341. The statements contained in Huey v. Stephens, supra, from which it might be inferred that the giving of an erroneous instruction on unavoidable accident is never harmless error, are overruled insofar as they conflict with this opinion.

■■ The plaintiff also complains that the court erred in admitting in evidence certain moving pictures of the plaintiff taken just one week prior to the trial. This film was taken of plaintiff by a professional photographer as the plaintiff walked down the street and entered an automobile. The photographer testified concerning the circumstance surrounding the exposure of the film and that the finished film correctly portrays what he witnessed. The plaintiff made no objection to the manner in which the film was projected for the benefit of the jury nor to its materiality. The testimony of the photographer was a sufficient prima facie showing of the correctness and identification of the film to justify the court in admitting it in evidence. Where photographs are proven to be a true and correct representation of whatever they purport to reproduce, they are admissible as an appropriate aid to a jury in determining the facts; and this rule applies to persons, places and things. Smith v. Territory, 11 Okl. 669, 69 P. 805. Scott, Photographic Evidence, sec. 606.

■ There is no merit to the contention that the verdict is not supported by the evidence. To the contrary, there is ample evidence to support the verdict.

The judgment is affirmed.

The Court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner James Nease and approved by Commissioners Jean Reed and J. W. Crawford, the cause was assigned to a Justice of this Court for examination and report to the Court. Thereafter, upon report and consideration in Conference, the foregoing opinion was adopted by the Court.